UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                                              Case No.: 8:20-cr-00184-TPB-JSS

JOSE FERNANDEZ CASTRO
_____/

**SENTENCING MEMORANDUM AND MOTION FOR VARIANCE**

Defendant, Jose Fernandez Castro, by and through the undersigned counsel, hereby files this Sentencing Memorandum and respectfully moves for a downward variance from the sentence recommended by the United States Sentencing Guidelines ("USSG"), and states as follows:

**I.      Offense Conduct and Procedural History**

On June 4, 2020, Mr. Fernandez Castro was indicted on a two (2) count indictment for his role in a conspiracy which alleges that from an unknown date and continuing through on or about May 14, 2020, Mr. Fernandez Castro and codefendants conspired to distribute, and possess with intent to distribute, cocaine, in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b), and 21 U.S.C. §960(b)(1)(B)(ii). [Dkt. #1]. Following initial appearance, the Court ordered that Mr. Fernandez Castro be detained. [Dkt. #28]. On October 20, 2020, Mr. Fernandez Castro appeared before the Honorable Julie S. Sneed and pleaded guilty to count one of the indictment. On November 5, 2020, Your Honor accepted Mr. Fernandez Castro's plea. [Dkt. #53]. He will be before the Court for sentencing on January 26, 2021, at 2:00 p.m.

1

## II. Sentencing Guidelines

The PSR, applying the 2018 Guidelines Manual, calculated a total offense level of 35 resulting in an advisory range of 168 to 210 months incarceration. Mr. Fernandez Castro has a criminal history score of zero, establishing a criminal history category of I. A two (2) level enhancement was added because the boat used for the offense was a semi-submersible vessel under U.S.S.G. §2D1.1(b)(3)(B). He was given a downward adjustment for clearly demonstrating acceptance of responsibility under U.S.S.G. §3E1.1. Mr. Fernandez Castro is Safety Valve eligible as he meets the criteria set forth in subdivisions (1)-(5) of subsection (a) §5C1.2, pursuant to U.S.S.G. §2D1.1(b)(18).

As this Court is well aware, a United States District Court is no longer limited by the guidelines since the matrix is merely considered advisory. *United States v. Booker*, 543 U.S. 220, 245-267 (2005). The United States Supreme Court in *Booker* gave judges the flexibility to use the sentencing range produced by the Guidelines as a "starting point" or "initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

Moreover, in *United States v. Talley*, 431 F.3d 784 (11th Cir. 2005), the Eleventh Circuit adopted a two-step procedure that district courts should follow when fashioning a sentence in the post-*Booker*, advisory Sentencing Guidelines era. "First, the district court must consult the Guidelines and correctly calculate the range provided by the Guidelines." *Id.* at 786. Second, the district court must consider the following ten factors: 1) the nature and circumstances of the offense

and the history and characteristics of the defendant; 2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 3) the need for deterrence; 4) the need to protect the public; 5) the need to provide the defendant with needed educational and vocational training or medical care; 6) the kinds of sentences available; 7) the Sentencing Guidelines range; 8) pertinent policy statements of the Sentencing Commission; 9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to the victims. *Id. See also 18 U.S.C. §3553(a).* "The weight to be accorded any given §3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Williams*, 456 F.3d 1353, 1363 (11th Cir. 2006).

### III. A Variance is Appropriate Under 18 U.S.C. §3553

#### a. *History and Characteristics of Mr. Fernandez Castro*

Mr. Fernandez Castro is 26 years old and has no known criminal history. (See PSR at ¶¶31-33). He was born on May 31, 1994, in Tumaco, Colombia, and is the result of a loving union of his parents who have been together for more than thirty (30) years. (See PSR at ¶39). His father is a fisherman and construction worker, and his mother is a homemaker. His mother suffers from debilitating migraines and is unable to work. His father suffers from high blood pressure and diabetes. Mr. Fernandez Castro has a very good relationship with his parents, although they are emotionally upset about his arrest. *Id.*

Mr. Fernandez Castro has five (5) siblings. His brother, Jose David Fernandez Castro, died tragically at the age of eighteen (18) when he drowned while swimming with friends. There was suspicion surrounding his death; however, no concrete evidence pointed to foul play. (See PSR at ¶40). Mr. Fernandez Castro maintains good relationships with all his siblings. *Id.*

Although his parents raised him the best they could, Mr. Fernandez Castro had an impoverished childhood. He did not have the luxury of childhood toys and had to work from a very young age. Any money earned went towards food and he and his siblings often went hungry. His family originally lived in Tumaco but were forced to move to a small town outside the city after the Revolutionary Armed Forces of Colombia (FARC) or "Guerrillas" claimed his home. (See PSR at ¶41). The family relocated and had to build a new house. The home was modest, and he lived with his parents, siblings, and nephew. They had electricity, but no running water.

Even in the new city, local gang activity ran rampant. Prior to his arrest, his neighborhood had become somewhat safer due to law enforcement presence to monitor the FARC and gang activity. (See PSR at ¶43). Mr. Fernando Castro recalls neighbors getting killed in the gang crossfire when he was younger. He was forced to drop out of school after the 6th grade in order to work to help support his family. (See PSR at ¶52). While in school, he enjoyed it and was a good student. He had good grades and aspired to be an engineer. *Id.*

At the age of eighteen (18), Mr. Fernandez Castro enlisted with the Colombian National Navy and served in the naval infantry for two (2) years. He enjoyed his time in the Navy and wished to have a military career; however, in order to obtain professional training and continue to serve, he needed to pay 10,000,000 Colombian pesos ($2,926), which he could not afford. Consequently, he was honorably discharged at the age of twenty (20). (See PSR at ¶54).

Mr. Fernandez Castro has two (2) young children, ages ten (10) and seven (7). After his eldest child was born, his partner left him for another man that she believed could give their son a better life. Mr. Fernandez Castro was actively involved in the lives of both his child and helped support them financially prior to his arrest. (See PSR at ¶42).

Mr. Fernandez Castro worked as a laborer in the construction industry and earned approximately $14 per day. He also worked part-time as a motorcycle taxi driver and earned anywhere from $5 to $8 a day. When the work was available, he sometimes fished with his father to earn additional money. (See PSR at ¶55). Prior to his arrest, he was having a hard time making ends meet due to lack of job opportunities. He needed money to provide for his family and assist with his parents' care due to their medical conditions. Out of desperation, he made the decision to participate in the criminal activity which ultimately led to his position before the Court. Mr. Fernandez Castro's family is deeply saddened by this situation but remain supportive.

While incarcerated, Mr. Fernandez Castro wishes to further his education and would like to obtain his GED. He also wishes to learn to read and write in English. He is eager to work and earn money to send to his family. Moreover, he would like to participate in any available vocational training and is particularly interested in air conditioning, computer technology, and automobile mechanics. (See PSR at ¶53).

b. *Nature of Offense*

Mr. Fernandez Castro understands the seriousness of his actions and the potential harm to the community and fully accepts responsibility for his role in the criminal activity. He was the first of the defendants to enter a plea in the matter and has been cooperative with the government.

He requests the Court consider his minor role in the overall, much larger drug smuggling enterprise. Mr. Fernandez Castro was not the captain nor did he understand the scope and structure of the criminal activity. He did not plan or organize it or exercise any decision-making authority. Instead, he was one of four (4) mariners operating a vessel from one point to another, in a chain of several other moves the contraband would travel.

Mr. Fernandez Castro does not deny he possessed an understanding of the illegal purpose of the trip; however, he did not know any further details concerning the overall operation, such as the ultimate destination of the contraband. He was recruited by a low-level participant who had dealings with intermediaries within a much larger drug trafficking organization. Mr. Fernandez Castro was not involved

in acquiring drugs, organizing the drug smuggling operation, or planning the route of the trip. He had no decision-making authority, leadership responsibility, or operational discretion.

c. *Need for Deterrence*

Mr. Fernandez Castro submits that a sentence below the guideline range is appropriate and reasonable and would afford adequate deterrence. This incident was nonviolent, his criminal history category is I, and he took immediate responsibility for his conduct. A lengthy prison sentence is not necessary as punishment for the instant offense or to deter other from committing such offenses. His criminal activity represents a single and rare occurrence.

The Sentencing Commission recognizes that offenders like Mr. Fernandez Castro who have no prior arrests pose the lowest risk of recidivism. *See U.S. Sent. Comm'n, Recidivism and the "First Offender" at 14 (May 2004).* The Sentencing Commission has concluded that recidivism data demonstrates that "first offenders" generally pose the lowest risk of recidivism. *See, e.g., U.S. Sent. Comm'n, "Recidivism Among Federal Offenders: A Comprehensive Overview," at 18 (2016).*

d. *Need to Avoid Unwarranted Sentencing Disparities*

The Court must also consider the need to avoid unwarranted sentencing disparities. This section outlines some recent cases of a similar nature in the Middle District of Florida and the sentences imposed.

7

- *United States v. Vianey Renteria Cuero*, Case No.: 8:20-cr-198-MSS-AAS.

On June 18, 2020, the defendant was charged in a two-count indictment with conspiracy with intent to possess and distribute 5 kilograms or more of cocaine, and possession with intent to distribute 5 kilograms or more of cocaine while onboard a vessel subject to the jurisdiction of the United States.

On or about June 11, 2020, the U.S. Coast Guard interdicted defendant's vessel in the waters of the Eastern Pacific Ocean, approximately one hundred and fifty (150) nautical miles southeast of the Costa Rica-Panama border. The crew of the boat was observed jettisoning bales of suspected contraband. The Coast Guard team recovered forty-seven (47) bales from the jettison field containing approximately one thousand three hundred and sixty-two (1,362) kilograms of cocaine. The defendant's total offense level started at thirty-eight (38). He received a reduction for acceptance of responsibly and Safety Valve. He also received a §5k1.1 downward departure, a reduction for role in offense, as well as a downward variance. On December 16, 2020, the defendant was sentenced to fifty-one (51) months incarceration.

- *United States v. Juan Diego Contreras Flores*, Case No.: 8:18-cr-390-T-17JSS.

On August 30, 2018, the defendant was charged in a two-count indictment with conspiracy with intent to possess and distribute 5 kilograms or more of cocaine, and possession with intent to distribute 5 kilograms or more of cocaine while onboard a vessel subject to the jurisdiction of the United States.

In August of 2018, the defendant and five (5) codefendants engaged in a cocaine smuggling venture. Their go-fast vessel was interdicted by the U.S. Coast Guard approximately 202 nautical miles southwest of Isle de Socorro, Mexico. Law enforcement recovered approximately sixty-five (65) bales of cocaine with an approximate weight of 1,307 kilograms. The defendant's base offense level was initially thirty-eight (38). He received a reduction for acceptance of responsibly and Safety Valve. He also received a §5k1.1 downward departure and downward variance. On April 5, 2019, the defendant was sentenced to 87 months incarceration.

- *United States v. Rosemberth Garcia Torres*, Case No.: 8:18-cr-00427-WFJ-JSS.

On September 25, 2018, the defendant was charged in a two-count indictment with conspiracy with intent to possess and distribute 5 kilograms or more of cocaine, and possession with intent to distribute 5 kilograms or more of cocaine while onboard a vessel subject to the jurisdiction of the United States.

On or about September 11, 2018, the defendant and two codefendants were on a small vessel that was transporting cocaine when it was interdicted by the U.S. Coast Guard in international waters. Sixty (60) bales of cocaine, weighing 1,200 kilograms, were discovered onboard. The defendant's initial base offense level was thirty-eight (38). He received reductions for acceptance of responsibility and Safety Valve. On February 25, 2019, the defendant was sentenced to 98 months incarceration.

## IV. Conclusion

Based on the circumstances set forth above, a downward variance should be considered in this case. It is respectfully suggested that the Court exercise its discretion and impose a sentence below the advisory guideline range.

DATED this 21st day of January 2021.

Respectfully submitted,

*/s/ Vanessa L. Albaum*
Vanessa L. Albaum
The Law Firm of Vanessa L. Albaum
Florida Bar No. 90849
vanessa@vlalegal.com
146 Second Street North, Suite 310-C
St. Petersburg, Florida 33701
P: (727) 233-4233
F: (727) 265-1865

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of January 2021, the undersigned counsel electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

AUSA Diego Novaes

*/s/ Vanessa L. Albaum*
Vanessa L. Albaum
The Law Firm of Vanessa L. Albaum
Florida Bar No. 90849
vanessa@vlalegal.com
146 Second Street North, Suite 310-C
St. Petersburg, Florida 33701
P: (727) 233-4233
F: (727) 265-1865
